UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GARY WAYNE NEWTON, | ) | 1:09-CV-01686 JMD HC |
| | ) | |
| Petitioner, | ) | ORDER DENYING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| v. | ) | |
| | ) | ORDER DIRECTING CLERK OF COURT TO |
| J. F. SALAZAR, | ) | ENTER JUDGEMENT |
| | ) | |
| Respondent. | ) | ORDER DECLINING TO ISSUE |
| | ) | CERTIFICATE OF APPEALABILITY |

Gary Wayne Newton (hereinafter "Petitioner") is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**PROCEDURAL HISTORY**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a plea of no contest entered on July 7, 2007, for transporting methamphetamine (Cal. Health & Safety Code § 11379(a)). Petitioner admitted to having prior felony convictions within the meaning of California's Three Strikes Law (Cal. Penal Code § 1170.12(a)-(d)). The trial court sentenced Petitioner to a prison term of fourteen years, consisting of double the upper term for the substantive offense.

Petitioner appealed his conviction to the California Court of Appeal, Fifth Appellate District, which issued a reasoned opinion on June 17, 2008, affirming Petitioner's conviction. (*See* Lod. Doc. 1, 3.)

On March 5, 2009, Petitioner filed a petition for writ of habeas corpus with the California Supreme Court. (Lod. Doc. 4)  The California Supreme Court denied the petition on August 12,

1  2009. (Lod. Doc. 5.)

2  On September 8, 2009, Petitioner filed the instant federal petition for writ of habeas corpus in

3  the Central District of California. The petition was transferred to this Court on September 23, 2009.

4  On January 15, 2010, Respondent filed an answer to the petition, to which Petitioner filed a

5  traverse on February 1, 2010.

6  <u>Consent to Magistrate Judge Jurisdiction</u>

7  On October 5, 2009, Petitioner consented, pursuant to Title 18 U.S.C. section 636(c)(1), to

8  have a magistrate judge conduct all further proceedings, including the entry of final judgment.

9  (Consent to Jurisdiction by US Magistrate Judge, ECF No. 7.)  Respondent consented to the

10 jurisdiction of a magistrate judge on October 30, 2009.  (Consent to Jurisdiction by US Magistrate

11 Judge, ECF No. 11.)  On July 30, 2010, the case was reassigned to the undersigned for all further

12 proceedings. (Order Reassignment, ECF No. 20.)

13                    **FACTUAL BACKGROUND**[1]

15  On April 17, 2007 at about 1:53 p.m., Deputy Trevor Lopes with the Kings
    County Sheriff's Department was driving a marked patrol car eastbound on Florinda
16  at Gladys. Lopes was wearing his uniform. Lopes caught up to a white passenger
    vehicle at the intersection of Whitney Drive and stopped. The driver stared back at
17  Lopes in his rearview mirror, drove through the intersection, and immediately pulled
    into the first residential driveway from the intersection.

18  Lopes thought the driver's actions seemed suspicious so he drove down the
    road, made a U-turn, and watched the vehicle. After 20 seconds, the driver backed out
19  of the driveway onto Florinda without exiting the vehicle and traveled eastbound past
    Lopes. The driver looked over toward Lopes and appeared to be stunned. The driver
20  pulled over immediately to the side of the road and walked through a front yard
    toward the door of a home. The driver never made contact with anyone, walked back
21  to his vehicle, and continued driving eastbound.

22  The driver made a right turn and drove southbound on Cortner. Lopes
    followed the driver who then turned onto Lacey. When Lopes caught up with the
23  driver, he turned into an open paved lot where there were half a dozen enclosed shops
    and some abandoned vehicles.

24  Lopes contacted the driver and identified him during the preliminary hearing
25  as appellant. Lopes approached the car, standing four or five feet from the driver's

26 _____

    [1]These facts are derived from the California Court of Appeal's opinion issued on June 17, 2008. (*See* Lod. Doc.
27 3.) Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996, a determination of fact by the state court is
    presumed to be correct unless Petitioner rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1);
28 *see Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); *Moses v. Payne*, 555 F.3d 742, 746 n. 1 (9th Cir. 2009).

side window. Appellant told Lopes he had just come from a meeting regarding his parole. Lopes asked appellant if he was supposed to be driving. Appellant admitted his license was suspended. When Lopes asked appellant if he could search the car, appellant replied, "I guess." In the trunk, inside a black CD case, Lopes found a black digital scale that had white residue all over it. There was a small black pouch with two baggies, one clear and one black, that contained a crystal-like substance.

A presumptive test was negative for methamphetamine in the black baggie but positive for methamphetamine for the substance in the clear baggie. The clear baggie weighed 1.8 grams, a usable amount of methamphetamine. Appellant later told Lopes that he parked in the driveway to avoid the deputy and that the methamphetamine belonged to him.

(Lod. Doc. 3 at 4-5.)

## DISCUSSION

### I.  Jurisdiction

A person in custody pursuant to a state court judgement may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. While Petitioner is currently incarcerated at Chuckawalla Valley State Prison in Blythe, California,[2] Petitioner's custody arose from a conviction in the Kings County Superior Court. (Pet. at 2.) As Kings County falls within this judicial district, 28 U.S.C. § 84(b), the Court has jurisdiction over Petitioner's application for writ of habeas corpus. *See* 28 U.S.C. § 2241(d) (vesting concurrent jurisdiction over application for writ of habeas corpus to the district court where the petitioner is currently in custody or the district court in which a state court convicted and sentenced the petitioner if the state "contains two or more Federal judicial districts").

### II.  AEDPA Standard of Review

On April 24, 1996, Congress enacted the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of AEDPA and is consequently

---

[2] The city of Blythe falls within Riverside County, which is within the jurisdiction of the Central District of California. *See* 28 U.S.C. § 84(a).

governed by its provisions. *See Lockyer v. Andrade*, 538 U.S. 63, 70 (2003). Thus, the petition "may be granted only if [Petitioner] demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1))*, overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc); *see Lockyer*, 538 U.S. at 70-71.

Title 28 of the United States Code, section 2254 remains the exclusive vehicle for Petitioner's habeas petition as Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment. *See Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) *overruled in part on other grounds*, *Hayward*, 603 F.3d at 555. As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id*. (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id*. Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id*. at 72 (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'unreasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law

erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the State court's application of clearly established federal law was "objectively unreasonable." *Id*. at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While *only* the Supreme Court's precedents are binding on the Arizona court, and only those precedents need be reasonably applied, we may look for guidance to circuit precedents"); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999) ("because of the 1996 AEDPA amendments, it can no longer reverse a state court decision merely because that decision conflicts with Ninth Circuit precedent on a federal Constitutional issue....This does not mean that Ninth Circuit caselaw is never relevant to a habeas case after AEDPA. Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established'").  Furthermore, the AEDPA requires that the Court give considerable deference to state court decisions.  The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).  A federal habeas court is bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002).

### III.    Review of Petitioner's Claims

The petition for writ of habeas corpus sets forth four grounds for relief.  In his first and second ground for relief, Petitioner contends that he was denied his Sixth Amendment right to counsel by trial counsel's deficient performance.  Petitioner's third ground for relief alleges that his right to a fundamentally fair trial was denied by the prosecutor's comments during the motion for a continuance.  Lastly, Petitioner contends that the denial of a continuance deprived him of his Fourteenth and Sixth Amendment rights.

\\\

\\\

### A. Grounds One and Two: Ineffective Assistance of Trial Counsel

In his first two grounds for relief, Petitioner contends that his Sixth Amendment right to counsel was violated by the ineffective assistance rendered by trial counsel. Specifically, Petitioner faults counsel's refusal to file a motion to disqualify the district attorney's office and counsel's failure to fully explain the terms of Petitioner's stipulated plea.

The initial step in applying AEDPA's standards is to "identify the state court decision that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Where more than one State court has adjudicated Petitioner's claims, a federal habeas court analyzes the last reasoned decision. *Id*. (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) for the presumption that later unexplained orders, upholding a judgment or rejecting the same claim, rests upon the same ground as the prior order). Thus, a federal habeas court looks through ambiguous or unexplained state court decisions to the last reasoned decision to determine whether that decision was contrary to or an unreasonable application of clearly established federal law. *Bailey v. Rae*, 339 F.3d 1107, 1112-1113 (9th Cir. 2003). The California Court of Appeal did not reach a decision on the merits of this claim, finding that a review of the matter on direct appeal was improper as there was no record of what trial counsel told Petitioner. (Lod. Doc. 3 at 6.) Thus, the California Supreme Court was the only court to issue a decision on the merits of Petitioner's ineffective assistance of counsel claims (Grounds One and Two). As the California Supreme Court summarily denied the claim, there does not exist a reasoned decision issued by the State courts on these claims. Thus, the Court must conduct an independent review of the record to determine whether the State court's denial was objectively unreasonable. *See Musladin v. Lamarque*, 555 F.3d 830, 835 (9th Cir. 2009); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003) (quoting *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000)).

An allegation of ineffective assistance of counsel requires that a petitioner establish two elements–(1) counsel's performance was deficient and (2) petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687(1984); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). Under the first element, the petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions

which did not fall within reasonable professional judgment considering the circumstances. *Strickland*, 466 U.S. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994).

Additionally, a petitioner must show that counsel's errors prejudiced the trial's outcome. *Strickland*, 466 U.S. at 687. Where the habeas petitioner pled guilty, this prong requires that the petitioner "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (holding that two part *Strickland* test is applicable for defendant challenging guilty pleas based on ineffective assistance of counsel); *see also Moore v. Czerniak*, 574 F.3d 1092, 1100 (9th Cir. 2009) ("In the context of a plea bargain, we specifically ask whether there is a reasonable probability that, but for counsel's deficient performance, the petitioner would have gone to trial rather than accept the plea bargain offered by the state"). A court need not determine whether counsel's performance was deficient before examining whether petitioner suffered as a result of the alleged deficiencies as prejudice is a prerequisite to a successful claim; therefore, any deficiency that was not sufficiently prejudicial to the petitioner's case is fatal to an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 697.

### 1. *Motion to Disqualify District Attorney's Office*

Petitioner contends that his trial counsel rejected Petitioner's request to file a motion to disqualify the district attorney's office as counsel did not see any basis for the motion. Petitioner claims that but for counsel's failure to raise this motion, he would not have pled guilty. Petitioner contends that the entire prosecutor's office should have been disqualified because a family member, who disliked him, worked in the office. Petitioner additionally contends that the actual attorney prosecuting his case was biased because she has prosecuted Petitioner in a previous case and stated that she would put him away for good.

\\\

\\\

U.S. District Court
E. D. California

7

In order to succeed on his ineffective assistance of counsel claim, Petitioner is required to show that the motions to disqualify the entire district attorney's office and the particular attorney who was prosecuting him were meritorious. *See Moore v. Czerniak*, 574 F.3d 1092, 1101-1102 (9th Cir. 2009) (noting that underlying claim for suppression motion must be meritorious to succeed on claim that counsel was deficient for failing to file suppression motion). California Penal Code section 1424(a)(1) states that "a motion to disqualify a district attorney from performing an authorized duty . . . may not be granted unless the evidence shows that a conflict of interest exists that would render it unlikely that the defendant would receive a fair trial." As the California Supreme Court summarized:

> [S]ection 1424 sets out a two-part test for determining whether recusal is appropriate. Under the first part, a court must determine whether a conflict exists, that is, whether "the circumstances of a case evidence a reasonable possibility that the DA's office may not exercise its discretionary function in an evenhanded manner." ( *People v. Conner*, [34 Cal.3d 141,148 (1983)]; *accord*, *People v. Eubanks*, [14 Cal. 4th 580, 594 (1996)]. If such a conflict exists, the court must further determine whether the conflict is " ' "so grave as to render it unlikely that defendant will receive fair treatment during all portions of the criminal proceedings." ' " ( *People v. Vasquez*, [39 Cal. 4th 47, 56 (2006)], italics omitted.) Thus, the first half of the inquiry asks only whether a "reasonable possibility" of less than impartial treatment exists, while the second half of the inquiry asks whether any such possibility is so great that it is more likely than not the defendant will be treated unfairly during some portion of the criminal proceedings.

*Haraguchi v. Superior Court*, 43 Cal. 4th 706, 713 (2008).

"Disqualification of an entire prosecutorial office from a case is disfavored by the courts, absent a substantial reason related to the proper administration of justice." *People v. Hernandez*, 235 Cal. App. 3d 674, 679-680 (1991). The California Supreme Court has found that a close familial relation employed by the district attorney's office may constitute a conflict of interest. In *Vasquez*, the California Supreme Court found that longtime employees of the district attorney's office who were the mother and stepfather of the defendant created a conflict of interest. *Vasquez*, 39 Cal. 4th at 55. The *Vasquez* court further found that recusal was necessary as there existed consequential likelihood of unfair treatment as the prosecuting attorney admitted that the relationship influenced her treatment of the case.

However, Petitioner's case is distinct from *Vasquez*. The Court notes that Petitioner claims that a family member works for the district attorney's office but fails to identify what the exact

relationship is between Petitioner and this family member or how long she has worked in the district attorney's office.  More importantly, as the *Vasquez* court itself noted:

> In most circumstances, the fact one or two employees of a large district attorney's office have a personal interest in a case would not warrant disqualifying the entire office. [Citation] But where the record on the recusal motion indicates that the conduct of any deputy district attorney assigned to the case, or of the office as a whole, would likely be influenced by the personal interest of the district attorney or an employee, the motion is properly granted.

*Id*. at 57.

Even assuming that a conflict of interest existed, Petitioner has failed to provide any evidence upon which the Court could conclude that there existed a likelihood of unfair treatment.  Petitioner does not produce any evidence that this familial relation is likely to influence the district attorney prosecuting the case.  While Petitioner asserts that this family member previously made statements threatening to put him away, Petitioner does not actually produce any evidence that the family member exerted any influence in this particular case.  As the California Supreme Court noted in *People v. Gamache*, 48 Cal. 4th 347, 363 (2010), "the possibility that a prosecutor might be influenced does not alone establish the requisite likelihood or probability that a defendant will be treated unfairly."  *See also Millsap v. Superior Court*, 70 Cal. App. 4th 196, 202-204 (1999) (finding that recusal of entire district attorney's office not warranted even though defendants had solicited someone to assassinate two members of that office).  In sum, the Court does not find that a motion to recuse the entire district attorney's office was meritorious.

Petitioner additionally claims that the district attorney prosecuting his case should have been disqualified as the attorney had previously prosecuted him on an unrelated charge and made statements that she would "get me on something else and when she did she would stick it to me and push it to the limit." (Pet. at 9.)  While the California courts have found a prosecutor who previously represented a criminal defendant creates a conflict of interest, the Court has not found any case in which a previous prosecution by the same attorney would be grounds for a recusal.  *See People v. Lepe*, 164 Cal. App. 3d 685, 687-688 (1985) (finding entire district attorney's office must be recused where the head district attorney was defendant's former counsel); *see also People v. Lopez*, 155 Cal. App. 3d 813, 824- 829 (1984) (recusal of individual attorney warranted by previous representation of defendant but entire office not need to be recused where case involved deputy district attorney).  In

fact, in an analogous situation, the California Supreme Court has found that there exists no conflict of interest "simply because the district attorney and the defendant have been adversaries in other legal proceedings, even where the defendant previous prevailed.  Other evidence of overriding bias must be present to warrant disqualification." *People v. Millwee*, 18 Cal 4th 96, 123 (1998) (finding that previous prosecution does not warrant recusal where there was no evidence of personal animosity or improper tactics).  Here, Petitioner has submitted no evidence that the prosecutor harbored personal animosity toward Petitioner.  The Court notes the statements Petitioner attributes to the prosecutor were supposedly made to a third party and this third party had not submitted a verified declaration.  Even assuming the veracity of these statements, the statement merely evidence the prosecutor's desire to prosecute Petitioner to the full extent of the law.  Furthermore, the Court notes that the prosecutor entered into settlement talks with Petitioner when she could have proceeded to trial, thus negating the argument that she intended to "stick it" to Petitioner.  Thus, Petitioner's motion to disqualify the district attorney prosecuting his case was not meritorious.

As the motion to disqualify the district attorney's office and the specific district attorney prosecuting his case were not meritorious, the Court finds trial counsel was not deficient in refusing to make these motions.  Consequently, Petitioner is not entitled to habeas corpus relief on this ground.

### 2. *Failure to Advise About Stipulated Plea*

Petitioner contends he would not have taken the deal had he been advised that he would have to serve eighty percent of the fourteen year deal.  Petitioner further contends that trial counsel failed to advise him of the meaning of a stipulated sentence.  Assuming *arguendo* that trial counsel was deficient in failing to explain the term stipulated plea and that Petitioner would have to serve eighty percent of his time, the Court does not find counsel's deficiency prejudiced Petitioner.  Petitioner's claim that he would have rejected the plea agreement had he known what a stipulated plea was and that he would have to serve eighty percent of the sentence is undermined by several factors.  As Petitioner himself admits, he potentially faced a sentence of twenty-two years had he proceed to

trial.³  The evidence against Petitioner was overwhelming and Petitioner presents no viable defense that he could have proceeded on at trial.  At the preliminary hearing, Deputy Trevor Lopes testified that his search of Petitioner's vehicle turned up two baggies, weighing approximately 1.8 and 2 grams each. (CT at 19-20.)  The baggies contained a crystal like substance that later tested positive as methamphetamine. (Id. at 19.)  Officer Lopes also testified that Petitioner confessed that the methamphetamine belonged to him and that Petitioner's urine tested positive for methamphetamine. (Id. at 22.)  Petitioner's claim that he would have rejected the plea is even more doubtful as Petitioner himself stated to the trial court that he understood that the stipulated sentence in this case was fourteen years.  (CT at 45.)  Petitioner further averred to the trial court that there had been no other promises of a lesser sentence other than the fourteen year stipulated sentence. (Id.)  In light of this record, the Court does not find Petitioner's argument, that he would had rejected the plea had he known that he was required to serve eighty percent of the fourteen years, persuasive.  Consequently, Petitioner is not entitled to habeas corpus relief on this ground.

### B.     Ground Three: Prosecutorial Misconduct

In his third ground for relief, Petitioner contends that the district attorney's comments during the continuance motion hearing violated his constitutional rights.

The standard of review for a claim of prosecutorial misconduct raised in a petition for writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642 (1974)); *accord Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995).  "[I]t is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden*, 477 U.S. at 181 (internal quotation marks omitted).  Rather, the court must decide "whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (internal quotation marks omitted); *Renderos v. Ryan*, 469 F.3d 788, 799 (9th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 643) ("Thus, to succeed, [Petitioner] must demonstrate that it 'so infected the trial with unfairness as to make the resulting conviction a denial of due process'").

---

³Respondent argues that Petitioner could have potentially faced a sentence of at least twenty-five years. (Resp't Answer Mem. P. & A. at 14, n. 3.)

Thus, the first issue for the Court to decide is whether the prosecutor's remarks were improper and secondly, whether such remarks or conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005) (citing *Darden*, 477 U.S. at 181).

In determining whether the State court decision adjudicating this claim is objectively unreasonable, the Court looks to the decision of the California Court of Appeal. While both the California Court of Appeal and the California Supreme Court reached the merits of Petitioner's claims, the California Supreme Court issued a summary denial of the claim. Thus, the Court looks through that decision to the last reasoned decision; namely, the decision by the California Court of Appeal. *See Nunnemaker*, 501 U.S. at 804. Here, the California Court of Appeal found that the comment did not so infect the trial with unfairness. In making this determination, the appellate court noted that:

> Appellant was not tried by a jury. He pled guilty to transportation of methamphetamine and admitted a prior serious felony allegation and prior drug conviction enhancements. The prosecutor's comments were after appellant's plea and just prior to sentencing. These comments would not have affected the trial court's judgment. The court sentenced appellant to a sentence he had stipulated to as part of the plea agreement. Even if we assume *arguendo* that the prosecutor's statement was error, it was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18.).

(Lod. Doc. 3 at 5.)

The Court does not find this decision by the appellate court to be an objectively unreasonable application of *Darden*. First, the Court does not find the prosecutor's statement to be improper. The prosecutor stated in response to defense counsel's motion for a continuance that:

> The People are opposed to any continuance in this matter. My notes reflect that [defense counsel] substituted in, in court on August 7th. That's more than 20 days ago and should have been ample time to receive any transcripts that he needed to receive. And in any event, it was a stipulated sentence. The People are ready to go today and prefer that Mr. Newton not take up anymore space in our jail for anymore time.

(RT at 103.[4])

This statement does not impugn Petitioner's character or that of his attorney, does not make allusion's to Petitioner's culpability, nor does it create inflammatory prejudice. *See Hein v. Sullivan*, 601 F.3d 897, 912-913 (9th Cir. 2010) (finding improper statements impugning character of defense

---

[4] The Reporter's Transcript of the continuance motion proceeding is contained in Respondent's Lodged Document No. 4.

counsel, calling counsel dishonest and alluding to cheap lawyer tricks, and vouching for prosecutorial witness's credibility); *Kellog v. Skon*, 176 F.3d 447, 451-452 (8th Cir. 1999) (prosecutor's remarks referring to defendant as "monster," a "sexual deviant," and a "liar" were improper as they were personal expression of defendant's guilt and created inflammatory prejudice). As the Ninth Circuit observed, "[e]very slight excess of a prosecutor does not require that a verdict be overturned and a new trial ordered." *United States v. Yarbrough*, 852 F.2d 1522, 1539 (9th Cir. 1988). Here, the Court does not find the statement by the prosecutor that the State was ready to proceed and would prefer that Petitioner not take up anymore space in the jail improper.

Even assuming that the statement was improper, the Court does not find that the statement infected the trial with unfairness. As the Ninth Circuit succinctly stated, "misconduct does not require reversal where there is strong evidence of the defendant's guilt." *Yarbrough*, 852 F.3d at 1539. Here, there was substantial evidence of Petitioner's guilt as evidenced by Deputy Lopes' testimony at the preliminary hearing. Deputy Lopes testified that a search of Petitioner's car revealed two baggies containing methamphetamine. Petitioner's urine also tested positive for methamphetamine and Petitioner admitted the drugs were his.

Additionally, it is unclear how the prosecutor's comments could have infected the proceeding with unfairness when the statements came after Petitioner had already entered his plea and just prior to sentencing. The statement obviously could not have influenced the trial judge's imposition of the sentence as Petitioner himself admits in his earlier grounds for relief that the trial court judge had no discretion in sentencing him since the plea was a stipulated plea. If Petitioner's argument is that the statement infected his trial with unfairness by influencing the judge to rule against his continuance motion, the Court finds such an argument unpersuasive. The statement was not misleading nor did it misstate the evidence or law. *Darden*, 477 U.S. at 180, n. 12 (finding that prosecutor's remarks, that defendant was an animal and that the prosecutor wished defendant's face had been blown off during his crimes, did not deprive defendant of fundamentally fair trial since statements did not manipulate or misstate evidence and the statements were responsive to defense's comments).

\\\

\\\

Furthermore, as noted by the California Court of Appeal, even if Petitioner could show that the comment so infected his trial with unfairness that a constitutional violation occurred, Petitioner is also required to establish that the misconduct had a "substantial and injurious effect or influence in determining" the outcome, specifically whether Petitioner would have pled guilty but for the constitutional error. *See O' Neal v. McAninch*, 513 U.S. 432, 436 (1995); *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993). Here, the statement occurred after Petitioner pled guilty and the trial judge had no discretion in sentencing Petitioner; thus, the argument that it had a substantial and injurious effect on Petitioner's decision to plead guilty or on the trial judge's imposition of the sentence is unavailing. Thus, Petitioner is not entitled to habeas corpus relief on this ground.

### C.     *Denial of Continuance Motion*

Petitioner contends that the denial of his continuance motion implicated his constitutional rights under the Sixth and Fourteenth Amendment. Petitioner argues that he was effectively deprived his right to counsel when the trial court denied his continuance motion.

The California Court of Appeal set forth the factual basis for the claim, summarizing that:

> Appellant retained private counsel, J.M. Irigoyen, for sentencing. On August 7, 2007, the court granted appellant's motion to substitute Irigoyen as counsel. The court granted appellant a continuance until August 29, 2007. Irigoyen informed the court he was planning to make a motion to set aside the plea agreement. Irigoyen said he would have his motion filed in two weeks, by August 21, 2007.
>
> On August 17, 2007, Irigoyen filed a motion to continue sentencing because he could not obtain a transcript of the change of plea hearing. On August 29, 2007, Irigoyen explained to the court that he received the documents he needed and had talked to appellant and was prepared to proceed on September 14, 2007. The court stated it was concerned because there was no suggestion in the motion that Irigoyen was still pursuing a motion to set aside the plea.
>
> Irigoyen stated he believed appellant had legal cause to challenge a strike. Irigoyen said he did not believe the strike was valid even though appellant admitted it. [The prior serious felony conviction Irigoyen was referring to was appellant's conviction in 2006 for making a criminal threat in violation of section 422.] Irigoyen conceded that after reading the change of plea transcript, he found no other basis to set aside the plea. Irigoyen still believed the strike was invalid based on an unnamed case from the Ninth Circuit Court of Appeals. Irigoyen explained this case, for which he had no citation, gives the court discretion to strike a strike in a case such as appellant's where the defendant is not factually guilty of the crime. The court then denied the motion for a continuance.

(Lod. Doc. 3 at 7-8.)

\\\

1    Petitioner's argument, that had it not been for the denial of a continuance Petitioner would
2    have filed a motion to set aside or withdraw his plea, is patently contradicted by the record. The
3    California Court of Appeal, the last state court to have issued a reasoned decision in this case,
4    observed that Petitioner's substituted counsel had indicated that he wanted to use the time during the
5    requested continuance to pursue a collateral attack on Petitioner's prior convictions, not a motion to
6    set aside his plea.[5] In fact, as noted in the Court of Appeal decision and in the transcript of the court
7    proceedings, substituted counsel admitted that nothing from the change of plea transcript could serve
8    as a basis for setting aside the plea. (RT at 104; Lod. Doc. 3 at 8.)  Thus, it is unclear how Petitioner
9    was deprived his right to counsel when counsel's reason for a continuance was the unavailability of
10   the transcript and when counsel himself stated there was no basis for setting aside the plea contained
11   in the transcript.

12    In requesting relief on this ground, Petitioner also alludes to a violation of his rights under
13   *Cunningham v. California*, 549 U.S. 270 (2007).  As observed by the California Court of Appeal,
14   while Petitioner was sentenced to the upper term, he does not fall within the type of cases protected
15   by *Cunningham*.  (Lod. Doc. 3 at 3, n. 6.)  The Court does not find this to be an objectively
16   unreasonable application of Supreme Court precedent.  Most factors used to impose the upper term
17   must be found by a jury beyond a reasonable doubt as it exceeds the maximum sentence. *See id.* at
18   274 (holding that imposition of the upper term based solely upon a trial judge's fact finding violated
19   the defendant's Sixth and Fourteenth Amendment rights because it "assigns to the trial judge, not the
20   jury, authority to find facts that expose a defendant to an elevated 'upper term' sentence").  However,
21   the imposition of the upper term in Petitioner's case was based on his prior convictions.  The use of a
22   prior conviction to impose a term beyond the statutory maximum has long been recognized as an
23   exception to the rule requiring a jury finding. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)
24   (holding that "other than the fact of a prior conviction, any fact that increases the penalty for a crime
25   beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable
26   doubt"); *Almendarez-Torres v. United States*, 523 U.S. 224, 247 (1998).  Consequently, Petitioner's

---

[5] With respect to the collateral attack, the California Court of Appeal found that the trial court had not abused its discretion in denying the motion as Petitioner's new counsel did not need the transcript of the plea hearing to collaterally attack the prior conviction.

1   *Cunningham* claim does not entitle him to habeas corpus relief.

2   **IV.     Certificate of Appealability**

3   A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances. *Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides that a judge may issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 123 S. Ct. at 1034; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 123 S. Ct. at 1040. Here, the Court finds that reasonable jurists would not disagree with the Court's denial of Petitioner's habeas claim and that Petitioner's claims are not deserving of encouragement to proceed further. Additionally, the Court finds that Petitioner has failed to make the requisite showing that he was denied a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated:   **August 5, 2010**              /s/ John M. Dixon
                                          UNITED STATES MAGISTRATE JUDGE